**FOX ROTHSCHILD LLP**
**(formed in The Commonwealth Of Pennsylvania)**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ 08401-7212
(609) 348-1515 (phone)/(609) 348-6834 (fax)
Michael J. Viscount, Jr., Esquire (MV 4219)
Joshua T. Klein, Esquire (JK 8978)
Brian R. Isen, Esquire (BI 9738)
mviscount@foxrothschild.com
jklein@foxrothschild.com
bisen@foxrothschild.com
*Attorneys for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ATLANTIC BROADCASTING OF LINWOOD NJ LIMITED LIABILITY COMPANY,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-49149 (JHW) |

**MOTION OF THE DEBTOR FOR ORDER AUTHORIZING AND
APPROVING EMPLOYEE INCENTIVE PROGRAM,** *NUNC PRO TUNC*
**TO THE DATE OF THIS MOTION, PURSUANT TO 11 U.S.C. § 363(b)
AND FOR WAIVER OF THE REQUIREMENTS OF
FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h)**

Atlantic Broadcasting of Linwood NJ Limited Liability Company the debtor and debtor-in-possession (the "Debtor") in the above-captioned case (the "Case") hereby files this motion for entry of an order authorizing and approving the Debtor's Employee Incentive Program, *nunc pro tunc* to the date of this Motion, pursuant to 11 U.S.C. § 363(b), and waiver of the requirements of Federal Rule of Bankruptcy Procedure 6004(h) (the "Motion"). In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates in support of the relief requested herein are 11 U.S.C. § 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Rules").

## BACKGROUND

### A. The Bankruptcy Filing

4. On December 20, 2010 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The Debtor continues to operate its business and property as a debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 Case.

5. The factual background relating to the commencement of these Chapter 11 cases is set forth in detail in the *Affidavit of John Caracciolo, Chief Executive Officer of the Debtor In Support of First-Day Motions* [ECF No. 10] (the "Affidavit"), which is incorporated herein.

6. On January 25, 2011, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in this Case pursuant to section 1102 of the Bankruptcy Code.

7. As set forth more fully in the Affidavit, Atlantic Broadcasting operates five prominent radio stations in the Atlantic City and Cape May, New Jersey, markets from a central

location at 1601 New Road in Linwood, New Jersey (the "ABL Stations").  Broadcasts formats including Rock, Talk, Spanish, Top 40 and Classic Hits.

8. The Debtor commenced this Chapter 11 case in order to permit the Debtor to conduct a sale of its business as a going concern under section 363 of the Bankruptcy Code.  The effort is supported by the DIP Lender, Sun National Bank (the "DIP Lender") (also the prepetition secured lender).  In January 2011, with the consent if the DIP Lender, the Debtor retained Media Services Group ("MSG") as its media broker to market the business for such a sale.  The retention of MSG has been authorized and approved by order of this Court.  Originally, the Debtor expected to have a sales process that would have concluded by March 17, 2011.  Although all of the major stakeholders in this case have worked hard to achieve this aggressive timeline, it has become evident that more time may be needed to maximize value for the estate.  As a result, the Debtor is now evaluating its options for extension of the sales process.

9. In the meantime the Debtor has reached crisis level as far as retaining staff while in chapter 11.  In order to minimize this problem and motivate the Debtor's employees to maintain the value of the Debtor's business as the sale process proceeds, the Debtor has developed the Employee Incentive Plan (the "EIP").  A copy of the EIP is attached hereto and incorporated herein as Exhibit A.  The EIP is broken down into three categories: (i) the Salesperson Incentive Plan (the "SIP"); (ii) Market Manager/Sales Manager Incentive Plan (the "Manager Plan"); and (iii) weekly increases for salaried non-sales employees (the "Non-Sales Plan").

**RELIEF REQUESTED**

10. By and through this Motion, the Debtor is seeking approval of the EIP and the implementation of the EIP, *nunc pro tunc* to the date of this Motion, pursuant to section 363(b)

3

of the Bankruptcy Code, as well as a waiver of the fourteen (14) day stay provided in Bankruptcy Rule 6004(h). The participants in the EIP are rank and file employees and not management level employees that are subject to section 503(c)(1) of the Bankruptcy Code.[1] Thus, an argument could be made that the EIP is in the ordinary course of business for the Debtor's dealings with its employees, similar to giving employees raises. However, the Debtor determined that seeking and obtaining court approval after notice was the better course of action.

## BASIS FOR RELIEF

A. **Approval of the EIP**

11. Incentive programs for the employees of going concern liquidation debtors have become quite common in chapter 11 cases. In such cases, the incentive programs are designed to encourage participants to work energetically to maintain (or even increase) going concern value thereby allowing debtors to obtain the highest or otherwise best offer from purchasers. When properly constructed, these programs can be a highly efficient means of maximizing value for a debtor's estate. Courts in the Third Circuit have recognized the benefits of—and approved—similar sale-related incentive programs. *See e.g., In re Dura Automotive Systems. Inc.,* Case No. 06-11202 (K.JC) (Bank. D. Del. June 28, 2007) (approving sale-related incentive payments to senior management); *In re PlusFunds Group, Inc.,* Case No. 06-10402 (JMP) (Banks. S.D.N.Y. April 19, 2006) (granting debtor's request to implement a sale-related incentive plan for six senior managers, payable upon a successful sale of substantially all of the debtor's assets as a going concern); *In re Nobex Corp,* No, 05 20050 (MFW) (Banks. D. Del. January 19, 2006) (approving sale–related incentive payments to certain employees).

---

[1] Although the employees that are participants in the Manager Plan are "managers", they are not actual management of the Debtor and are not considered "insiders" under the section 101(31) of the Bankruptcy Code.

4

12. Targeted incentive programs, based on a variety of financial and other metrics, also have repeatedly been recognized by courts in the Third Circuit as having particular value in motivating employees under the particular facts and circumstances of the relevant chapter 11 case. *See e.g., In re Dura Automotive Sys., Inc.,* Case No. 06-11202, (KJC) (Bankr. D. Del. April 25, 2007) (approving cash payments under the debtors' key management incentive plan for progress made in the debtors' operational restructuring initiatives); *In re Werner Holding Co. (DE). Inc.,* Case No, 06-10578 (KJC) (Bankr. D. Del. July 20, 2006, August 22, 2006, and December 20, 2006) (approving employee incentive plan providing for cash payments as rewards for attainment of collective operational restructuring goals and personal performance goals in support); *In re Riverstone Networks, Inc.,* No. 06-10110 (CSS) (Bankr. D. Del. March 28, 2006) (approving an employee bonus program providing for cash payments for successful completion of certain individual and company performance goals); *In re Pliant Corporation,* No. 06-10001 (MFW) (Bankr. D. Del. March 14, 2006) (approving management incentive compensation plan providing for cash awards for achievement of organizational performance goals and personal performance goals in support); *In re Plusfunds Group, Inc.,* Case No. 06-10402 (Bankr. S.D.N.Y. April 19, 2006) (approving payments to key management under incentive plan upon sale).

13. All of the cited cases recognize the principles in favor of permitting incentive compensation programs, where achievement of the incentivization goals results in maintaining and/or increasing value for the bankruptcy estate. Granted, the EIP is not the typical incentive compensation program in that it is for rank and file employees as opposed to management, but the same principles utilized in the cited cases should apply when the same goals are sought to be

5

achieved maintaining and/or increasing value during a sale of the business as a going concern. The Debtor would submit that this fact is all the more reason that the EIP should be approved.

14. Furthermore, the SIP meets the requirements for transactions under section 363(b) of the Bankruptcy Code. Section 363(b)(1) states that the "trustee [or debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Courts within the Third Circuit applying section 363(b) of the Bankruptcy Code have held that transactions outside the ordinary course of business should be approved under section 363(b) when they are supported by the sound business judgment of the trustee. *In re Martin,* 91 F.3d 389, 395 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991); *In re Phoenix Steel Corp.,* 82 B.R. 334, 335 (Bankr. D. Del. 1987). A debtor's showing of sound business justification need not be unduly exhaustive; instead a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.,* 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

15. The Debtor has determined, in its business judgment, that the SIP is tailored so as to ensure that it will result in maintaining value and/or increasing value for the Debtor's estates. First, the non-sales employees and managers are salaried and most have not had any raise in three (3) years but have remained with the Debtor throughout their difficulties and continue to do so in chapter 11. In addition, the Debtor knows that these employees have been going above and beyond their normal duties since the Petition Date. The Debtor believes that the Manager's Plan and the weekly increases in salaries for the employees under the Non-Sales Plan is more than reasonable under the circumstances. Second, the SIP is critical in order to incentivize the sales team, particularly at this time of the year. Each year March is when broadcasters in seasonal markets such as Atlantic and Cape May Counties begin ramping up advertising sales for the

6

upcoming summer. In fact, a majority of the Debtor's revenues comes from summer advertising that is booked between March and May each calendar year. The issue for the sales team members and the Debtor is the way the sales team is compensated (without the SIP) and that the Debtor is seeking to sell the business. Unlike most industries, the Debtor's salespeople are paid commission following collection of a receivable. Given the chapter 11 and sale situation, the sales team is understandably concerned that if they write an order for advertising today and the collection doesn't occur until after a sale close, until is highly likely that they will never receive compensation. The SIP will ensure that they will receive compensation for their work as they write new advertising business[2]. The Debtor believes that this is a simple solution to an extremely important issue, particularly at this time of the year.

16.     Therefore, the Debtor submits that the EIP should be approved because it is appropriate under the circumstances, supported by sound business justifications and is tailored so as to ensure there is a benefit to the Debtor's estates.

B.    **Bankruptcy Rule 6004(h) Waiver**

17.     Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtor requests that any order approving the EIP be effective immediately by providing that the [14]-day stay under Bankruptcy Rules 6004(h) is waived.

18.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. Advisory Committee Notes to

---

[2] "New Written Business" as used in the SIP means any advertising orders written each week, regardless if it is a new customer or an existing customer. For example, if in a given week a sales team member writes an order for $10,000 of advertising for Budweiser (existing customer) and $5,000 for the Tropicana, the salesperson will have written $15,000 of new business.

7

Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Lawrence P. King, *Collier on Bankruptcy,* 6004.11 at 6004-18 (16th Ed. 2010). *Collier* further provides that if an objection is filed and overruled, and the objecting party inform the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id.*

19. The relief sought herein and approval of the EIP is necessary immediately in order to give the Debtor's employees the security that the EIP has been approved and they will be compensated accordingly and failure to waive the requirements of Bankruptcy Rule 6004(h) would eviscerate the purpose of obtaining this relief as quickly as possible.

## EXPEDITED RELIEF

20. Due to the exigent circumstances of this Motion and the relief sought herein, the Debtor is filing contemporaneously herewith a motion requesting the Court set an expedited hearing on the Motion on shortened notice.

## NOTICE

21. No trustee or examiner has been appointed in this Case. The Debtor is serving notice of this Motion on (i) the Office of the United States Trustee; (ii) counsel for Sun National Bank; (iii) counsel for the Committee; (iv) all creditors; and (vi) any parties that have requested notice in these cases pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtor requests that the Court enter an order (i) granting the motion;

8

PH1 2764312v1 03/10/11

(ii) authorizing and approving the EIP, *nunc pro tunc,* to the date of this Motion; and (iii) for other relief as is proper and just.

DATED: March 11, 2011

                FOX ROTHSCHILD LLP
                (Formed in the Commonwealth of Pennsylvania)

                *Counsel for Debtor and Debtor-in-Possession*

                By:   /s/ Joshua T. Klein, Esquire
                      Michael J. Viscount, Jr., Esquire
                      Joshua T. Klein, Esquire
                      Brian R. Isen, Esquire

PH1 2764312v1 03/10/11