**FOX ROTHSCHILD LLP**
**(formed in The Commonwealth Of Pennsylvania)**
1301 Atlantic Avenue
Midtown Building, Suite 400
Atlantic City, NJ 08401-7212
(609) 348-1515 (phone)/(609) 348-6834 (fax)
Michael J. Viscount, Jr., Esquire (MV 4219)
Joshua T. Klein, Esquire (JK 8978)
Brian R. Isen, Esquire (BI 9738)
mviscount@foxrothschild.com
jklein@foxrothschild.com
bisen@foxrothschild.com
*Attorneys for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: <br><br> ATLANTIC BROADCASTING OF LINWOOD NJ LIMITED LIABILITY COMPANY, <br><br> Debtor. | Chapter 11 <br><br> Case No. 10-49149 (JHW) <br><br> Hearing Date:  April 11, 2011 at 10:00 a.m. |

**MOTION OF THE DEBTOR FOR ORDER APPROVING A SETTLEMENT BY AND BETWEEN THE DEBTOR AND ACCESS.1 COMMUNICATIONS CORP. T/A NBC TV 40 AND APPROVAL OF A LEASE AMENDMENT PURSUANT TO RULE 9019**

Atlantic Broadcasting of Linwood NJ Limited Liability Company the debtor and debtor-in-possession (the "Debtor") in the above-captioned case (the "Case") hereby files this motion for entry of an order approving a settlement by and between the Debtor and Access.1 Communications Corp.t/a NBC TV 40 ("Access.1" or "Tenant") by approving an amendment to lease under which Access.1 occupies space in the building owned by the Debtor at 1601 New Road, Linwood, New Jersey (the "Linwood Building"), pursuant to Federal Rule of Bankruptcy

Procedure 9019 (the "Motion"). In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate in support of the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Rules").

## BACKGROUND

**A.  The Bankruptcy Filing**

4. On December 20, 2010 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The Debtor continues to operate its business and property as a debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 Case.

5. On January 25, 2011, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in this Case pursuant to section 1102 of the Bankruptcy Code.

6. On February 8, 2011, the Court approved on a final basis debtor in possession financing for the Debtor provided by Sun National Bank (the "DIP Lender") which is also the Debtor's pre-petition secured lender pursuant to which the DIP Lender has a first priority lien and security interest in all of the pre- and post-petition assets of the Debtor.

2

7. The factual background relating to the commencement of these Chapter 11 cases is set forth in detail in the *Affidavit of John Caracciolo, Chief Executive Officer of the Debtor In Support of First-Day Motions* (ECF No. 10) (the "Affidavit"), which is incorporated herein.

8. As set forth more fully in the Affidavit, Atlantic Broadcasting operates five prominent radio stations in the Atlantic City and Cape May, New Jersey, markets from a central location at 1601 New Road in Linwood, New Jersey (the "Radio Stations"). Broadcasts formats including Rock, Talk, Spanish, Top 40 and Classic Hits.

9. The Debtor commenced this Chapter 11 case in order to permit the Debtor to conduct a sale of its business as a going concern under section 363 of the Bankruptcy Code.

**B.    Access.1 Lease**

10. The Debtor acquired the Stations and associated real property including the Linwood Building from Access.1 as part of an asset purchase transaction that closed on October 15, 2008 (the "2008 Transaction"). Prior to the 2008 Transaction, Access.1 owned the Radio Stations, and a television station known as NBC TV 40 (the "TV Station"), and operated both businesses out of the Linwood Building. When the Radio Stations and the Linwood Stations were sold to the Debtor, Access.1 remained in possession of a portion of the Linwood Building and the two (2) parties executed a certain Lease Agreement dated October 15, 2008 (the "Lease") as part of the 2008 Transaction. A copy of the Lease is attached hereto and incorporated herein as Exhibit A.

11. The Lease provides for occupancy by the Tenant of approximately 4,200 square feet (the "Premises") in the Linwood Building and the payment of base rent monthly for an initial term of 3 years with extension options in favor of the Tenant. Currently, the base rent is

3

$5,407.50, and the Lease is scheduled to terminate on October 31, 2011, unless Tenant exercises its extension option.

12. When current management replaced the Debtor's prior management in 2010, they raised certain issues pertaining to the Lease. Among other things, Debtor's management believed that the Lease obligated the Tenant to pay a share of common building expenses and utilities even though for approximately 2 years beforehand all the common expenses were billed to and paid by the Debtor, and no contribution was sought from the Tenant. By letter dated September 28, 2010, the Debtor first made demand in writing on the Tenant for the payment retroactively of $94,214.08 allegedly due for the Tenant's prior proportionate share of the common expenses.

13. Access.1 disputed the Debtor's interpretation of the Lease and refused to pay any sums toward the expenses of the Linwood Building, pointing to documentation that may have pre-dated the Lease, communications with Debtor's prior management, and the course of dealing between the parties before the Debtor's 2010 management change over. Since the Debtor's bankruptcy filing, the Dispute has continued concerning, among other things: (i) whether the Lease constitutes the entire agreement of the parties, (ii) the Tenant's obligation to pay as Additional Rent[1] sums to cover Property Operating Expenses, Insurance and Taxes for the Building and other expenses for Common Areas (the "Common Areas Charges"), (iii) the Debtor's obligation to provide building services to the Tenant involving a receptionist, telephone, electricity, and other utilities (the "Shared Services"), and (iv) the amount of space in the Building occupied by the Tenant (collectively, the "Disputes").

14. In order to resolve the Disputes and avoid the need for costly litigation and unnecessary delay, the Debtor and Access.1 entered into negotiations and have resolved the

---

[1] Any capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Lease Amendment attached hereto and made a part hereof as Exhibit B.

Disputes on the terms contained in a Lease Amendment dated March 8, 2011 (the "Lease Amendment").  A copy of the Lease Amendment is attached hereto and incorporated herein as Exhibit B.

15. A summary of the pertinent terms of the Lease Amendment are as follows:

a. <u>Initial Payment</u>.  In consideration of the provision of Shared Services under the Lease up to and including January 31, 2011, and in accordance with the paragraphs 10 and 11 (pertaining to conditions of escrow) herein, Access.1 shall provide the sum of $44,500.00 in immediately available funds by wire transfer to be held in an escrow account of the Debtor's attorney, Fox Rothschild LLP (the "Escrow Agent") upon execution hereof by both the Debtor and Access.1, pursuant to the wire instructions set forth on Exhibit "A" hereto.  In accordance with paragraphs 10 and 11 herein, upon the approval of the Bankruptcy Court in the Debtor's chapter 11 case the foregoing payment shall be transferred to the Debtor; and in the event this agreement is disapproved by the Bankruptcy Court in the Debtor's chapter 11 case the foregoing payment shall be immediately returned to Access.1.

b. <u>Additional Rent</u>.  In full satisfaction of Access.1's obligation to pay its Proportionate Share of Common Area Charges from February 1, 2011 to October 31, 2011, Access.1 shall pay monthly as Additional Rent, the sum of $1,000.00, which payment shall be due and made each month starting February 1, 2011, together with the payment of Base Rent due under the Lease, and this payment of Additional Rent of $1,000.00 and the Base Rent due under the Lease shall be Access.1's only obligations for the payment of rent due under the Lease through the end of the Initial Term thereof.  Any portion of the Additional Rent due under this paragraph for periods prior to the execution hereof by the Debtor and Access.1 shall be paid into Escrow at the same time as Access.1 makes the payment due under paragraph a, above.

c. <u>Provision of Services</u>.  Until the Lease is terminated, but in no event beyond October 31, 2011, the Debtor shall continue to provided to for the benefit of the Access.1 (i) the services of a receptionist for the Building from the hours of 9 a.m. to 5 p.m. Monday through Friday, subject to regular breaks and unplanned absences, (2) telephone service to the Premises and the adjoining building owned by the Access.1 in the same configuration as existing on December 30, 2010, and (3) except to the extent previously provided by separate hookup paid for by Access.1, if any, water, sewerage, electricity and other utility services to the Building for use by Access.1 in the Premises.  If the Debtor fails to provide utilities or a receptionist as required by this paragraph, then after first giving the Debtor three (3) days written notice, and in the event of a utility service interruption the notice requirement shall be reduced to 24 hours ("24 Hours Notice"), Access.1 may do so and the cost incurred by Access.1 may be deducted

5

from the payments of rent due under paragraph c, above. Notice for purposes of this paragraph sale be sent by mail, hand delivery, e-mail or fax, and in the case of 24 Hours Notice, by telephone, and shall be deemed effective upon receipt when directed as set forth in the Lease Amendment.

    d.    <u>Waiver of Extension Options/Early Termination</u>.

        i.    Access.1 waives any right under the Lease to extend the term thereof beyond October 31, 2011 and agrees to vacate the Premises on or before October 31, 2011 (the "<u>Scheduled Termination Date</u>") or on such earlier date as the Lease may be terminated in accordance with the terms of the Lease as modified by paragraph 4(b) the Lease Amendment.

        ii.    Access.1 may terminate the Lease at any time before the Scheduled Termination Date by providing not less then 60 days prior written notice to the Debtor addressed and delivered as set forth in paragraph 3, above (the "<u>Early Termination Notice</u>"). Upon giving of the Early Termination Notice, the Lease shall end on the last day of the second full calendar month after the date the Early Termination Notice is received by the Debtor.

Reference is made to the Lease Amendment attached as Exhibit B hereto for a complete statement of the terms of the settlement between the parties (the "<u>Settlement</u>").

## RELIEF REQUESTED

16.    By this Motion, the Debtor seeks the approval of the Lease Amendment pursuant to Bankruptcy Rule 9019.

## BASIS FOR RELIEF

17.    Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor. . . and to any other entity as the court may direct. Fed. R. Bankr. P. 9019(a); *see also Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996).

6

18. The Debtor is obligated to maximize the value of the estate and make his decisions in the best interests of all of the creditors of the estate. *Martin,* 91 F.3d at 394. The Debtor believes, in its business judgment, that the Lease Amendment is in the best interests of the estates and all of the creditors. Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Martin,* 91 F.3d at 395.

19. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* at 393. In striking this balance, courts should consider four factors: "i) the probability of success in the litigation; ii) the likely difficulties in collection; iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and iv) the paramount interest of the creditors." *Id.* (internal citations omitted).

20. A review of these four (4) factors demonstrates that the Lease Amendment is in the best interests of the Debtor's estate and all of its creditors, as determined in the Debtor's reasonable business judgment. First, the Initial Payment of $44,500, which has already been paid into escrow, is a substantial recovery by the Debtor of monies claimed to be due by the Tenant under the Lease, and the Settlement allows the Debtor to collect such funds (as well as another up to $9,000 more in monthly Additional Rent), without costly litigation that would have diminished the Debtor's return. Second, the Lease Amendment provides the Debtor with an additional $1,000 per month as additional rent to be paid by the Tenant going forward each month for the balance of the term of the lease beginning February 1, 2011. Upon further analysis, the Debtor has determined that this amount represents a reasonable approximation of the Tenant's proportional share of common area charges, which again, is being obtained without

the need for costly litigation. Third, by entering into the Lease Amendment, the Debtor for the first time since it acquired the Linwood Building will have assistance in covering the expenses of maintaining and operating the building and is assured of receiving these payments monthly as long as the Tenant remains in possession through October 31, 2011.

21.    It should also be noted that receipt of the payments totaling as much as $53,500 will supplement the Debtor's cash flow and reduce the required borrowing and associated expense under the DIP Loan, and that both the DIP Lender and the Committee have indicated no objection to the Settlement.

22.    Therefore, based on the foregoing and the Lease Amendment, the Court's approval of the Lease Amendment is appropriate and in the best interests of the Debtor's estate.

### **NOTICE**

23.    No trustee or examiner has been appointed in this Case. The Debtor has served notice of this Motion on (i) the Office of the United States Trustee; (ii) counsel for Sun National Bank; (iii) counsel for Access.1; (iv) counsel for the Committee; (v) all creditors; and (vi) any parties that have requested notice in these cases pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtor respectfully requests entry of an order approving this Motion and the Settlement Agreement and granting such other and further relief as is just and proper.

DATED: March 15, 2011

        FOX ROTHSCHILD LLP
        (Formed in the Commonwealth of Pennsylvania)

        *Counsel for Debtor and Debtor-in-Possession*

        By:    /s/ Joshua T. Klein, Esquire
             Michael J. Viscount, Jr., Esquire
             Joshua T. Klein, Esquire
             Brian R. Isen, Esquire