**MORITT HOCK & HAMROFF LLP**
400 Garden City Plaza
Garden City, NY 11530
(516) 873-2000
Marc L. Hamroff (admitted *pro hac vice*)
mhamroff@moritthock.com
Lee J. Mendelson
lmendelson@moritthock.com
*Counsel for Boardwalk Radio, LLC*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ATLANTIC BROADCASTING OF LINWOOD NJ LIMITED LIABILITY COMPANY,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-49149 (JHW) |

**REPLY IN FURTHER SUPPORT OF MOTION BY BOARDWALK RADIO, LLC FOR AN ORDER UNDER 11 U.S.C. §§ 105, 503 AND 507 AND RULE 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FIXING BREAK-UP
FEE AND EXPENSE REIMBURSEMENT**

Boardwalk Radio, LLC (the "Stalking Horse" or "Boardwalk") hereby files this Reply in Further Support of its Motion (the "Motion") for entry of an Order approving a break-up fee and expense reimbursement to Boardwalk pursuant to Sections 105, 503 and 507 of the Bankruptcy Code in connection with a pending sale of the assets of Atlantic Broadcasting of Linwood NJ Limited Liability Company (the "Debtor" or the "Seller"), as a debtor and debtor-in-possession in the above-captioned case (the "Case") and granting related relief. In further support of the Motion, Boardwalk respectfully states as follows:

1.      As set forth more fully in the Motion, Boardwalk has provided this Court and the relevant parties with the factual background surrounding the circumstances within which Boardwalk agreed to serve as a stalking horse for the pending Sale[1] process.  The only party to object to the Motion was the Office of the United States Trustee ("UST") which filed an Objection [Docket No. 146] asserting that there was no benefit to the estate by the actions of Boardwalk requiring payment of a Break-up Fee and there is no support for payment of the Expense Reimbursement.  With all due respect, we believe the UST is mistaken on the first argument and we can provide further support in respect of the second.  Boardwalk believes that this Court can evaluate the all of the attendant circumstances here and determine from the record that Boardwalk's role (irrespective of whether it is comprised of insiders) served the Debtor's estate and creditors well.

2.      It is respectfully submitted that there can be no dispute but that absent the stalking horse agreement with Boardwalk, there would have been no auction, the Debtor would have run out of funds and this case would have been dismissed or converted.  In fact, the DIP Lender specifically rejected a lower bid by another party because they didn't want to pursue the process at an amount less than $3,000,000, i.e. the amount bid by Boardwalk.

3.      There can be no clearer evidence of a benefit to the Debtor and its estate than the successful sale conducted by the Debtor's broker earlier today, resulting in a higher and better bid than that submitted by Boardwalk.  In fact, several pre-auction bids were received and an active auction process ensued.  The Sale resulted in a final bid of $4,200,000, $1,200,000 over that originally bid by Boardwalk.

4. Moreover, while Boardwalk may not have gathered the traditional due diligence for use in a data room that an outside third party would have done, our understanding is that given the amount of work that Boardwalk did in preparing and negotiating both the Asset Purchase Agreement and related Schedules the other bidders were able to work off a viable agreement and few if any made changes to the same. The depth of the Schedules to the Asset Purchase Agreement and information contained therein, which could be likened to due diligence, were useful in the process and resulted in a final bid.

5. The timing of the Sale process facilitated by Boardwalk's bid was necessary to avoid closing the Debtor down as, absent a Sale this week, the Debtor would have run out of funds at the end of this week. In fact, the DIP Lender was unwilling to advance any further funds under the DIP loan absent an agreement to facilitate a Sale in the early part of May. Certainly this Sale as opposed to a closed company is clear evidence of benefit to the estate.

6. Further, to date Boardwalk has incurred legal fees in excess of the Expense Reimbursement cap ($35,000). In fact, over $70,000 in total fees and expenses have been incurred to date.

7. For these reasons, Boardwalk respectfully requests that the Court enter an Order approving the relief sought in the Motion[2] and award Boardwalk its Break-up Fee of $126,000, Expense Reimbursement of $35,000 and direct that the payment thereof be paid directly from the Sale proceeds before any part thereof is distributed to pay other parties in interest with Boardwalk having a lien against the proceeds of Sale to the extent of the Break-up Fee and Expense Reimbursement.

---

[1] Capitalized terms used herein not otherwise defined have been defined in the Motion.
[2] At the Bid Procedures hearing, the Debtor, the DIP Lender and the Creditors Committee supported the relief sought. None of those parties has objected to the Motion.

Dated: Garden City, New York
      May 4, 2011                    Respectfully submitted,

                                    **MORITT HOCK & HAMROFF LLP**

                                    *Counsel for Boardwalk Radio, LLC*

                                    By: */s/ Lee J. Mendelson*
                                    Lee J. Mendelson
                                    lmendelson@moritthock.com
                                    Marc L. Hamroff (admitted *pro hac vice*)
                                    mhamroff@moritthock.com
                                    400 Garden City Plaza
                                    Garden City, New York 11530
                                    (516) 873-2000

219978v1